UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CR-00095-FL

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| GENARO FLORES-DURAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant Genaro Flores-Duran's Motion to Suppress [DE-43] evidence seized and statements given subsequent to a police stop and search of his vehicle. The Government filed a Response [DE-50] in opposition to the motion to suppress. To further develop the record, the Court conducted an evidentiary hearing on February 1, 2011, at which the Government and Defendant with counsel appeared. Accordingly, this matter is now ripe for decision.

## STATEMENT OF THE CASE

On September 1, 2010, a Federal Grand Jury returned a single count Indictment [DE-13] against Defendant. The indictment charged that Defendant, along with a codefendant, "[b]eginning in or about January of 2003, the exact date being unknown to the Grand Jury, and continuing up to and including the date of the indictment, in the Eastern District of North Carolina and elsewhere . . . did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons, known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with the intent to distribute five (5) kilograms

or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)."

On November 15, 2010, Defendant filed the instant motion to suppress. He contends that law enforcement officers lacked a warrant, probable cause, or reasonable suspicion to initiate a traffic stop of his vehicle on August 11, 2010 and that, accordingly, all evidence seized and statements given as a result of that stop should be suppressed under the Fourth Amendment. The Government argues in response that the traffic stop was properly conducted and that no constitutional violation occurred.

## STATEMENT OF THE FACTS

Deputy Jonah Brandon Jenkins ("Deputy Jenkins"), a law enforcement officer with the Jasper County Sheriff's Office ("JCSO") in South Carolina, was the sole witness at the evidentiary hearing on February 1, 2011. The Court finds the following facts based on his testimony.

Deputy Jenkins has been a law enforcement officer with the JCSO for approximately a year and a half. Currently, he is a K-9 handler and an interstate criminal enforcement officer. Previously, Deputy Jenkins spent two years at the Hardeeville Police Department in South Carolina, where he held the same positions. Prior to that, Deputy Jenkins also worked in the patrol division of the JCSO for two years.

Deputy Jenkins was on duty during the early evening hours of August 11, 2010 and driving a marked 2008 Chevy Tahoe K-9 Unit patrol vehicle with interior police lights. Along with fellow JCSO officer Detective Charles Mitchell, he was working a stretch of Interstate 95 ("I-95") extending from the South Carolina—Georgia state line to South Carolina mile marker 33. At just before 7:00 p.m., Deputy Jenkins was sitting stationary in his patrol car near mile

marker 13 on the northbound side of I-95. Deputy Jenkins observed a tow truck drive by in the #2 lane (the slow lane), followed closely by a black Ford Taurus traveling in the #1 lane. As the vehicles passed Deputy Jenkins, the Taurus moved into the #2 lane behind the tow truck, leaving only a distance of one half to one full car length in between the two vehicles.

Deputy Jenkins testified that the JCSO follows a rule of thumb that a safe following distance constitutes approximately one car length for every ten miles per hour of speed that a vehicle is traveling. The speed limit on that stretch of I-95 is 70 miles per hour, and both vehicles were traveling at approximately that speed. Accordingly, Deputy Jenkins testified that the fact that the Taurus pulled in right behind the tow truck instead of going around it or pulling in behind at a greater distance caught his attention. Deputy Jenkins felt that a one half to one car length distance was an unsafe following distance and, as a result, decided to pull out and follow the two vehicles in order to "take a second look" and see if the Taurus would increase its following distance over time.

Deputy Jenkins followed the vehicles for approximately four miles. The Taurus did not increase its following distance, though did apply its brakes on several occasions. As the vehicles were coming up on a construction zone, Deputy Jenkins became concerned and decided to initiate a traffic stop of the Taurus for following too closely. He activated his blue lights, manually turned on his in-car video camera[1], and pulled over the Taurus.

After pulling off the highway, Deputy Jenkins exited his patrol car and approached the Taurus. He noticed that it was an older model and had tinted windows. He observed Defendant, the driver of the vehicle, stretch and reach for the center console. As Deputy Jenkins walked up to the car, he noticed that the interior was very cool and had a "lived in look," with water bottles

---

[1] A DVD was produced by this camera which shows Deputy Jenkins following the Taurus and pulling it over. It was introduced at the February 1, 2011 hearing as Government's Exhibit 1.

and trash on the floor. He also observed three cell phones: one on the console and two on Defendant's person. When Deputy Jenkins spoke to Defendant, he noticed that Defendant began to sweat, "appeared more nervous than the average motorist," and that his hands were trembling. At Deputy Jenkins' request, Defendant provided a Washington state driver's license, two vehicle registrations (one for North Carolina and one for South Carolina) and insurance paperwork. Based on his narcotics interdiction training, Deputy Jenkins' observations of Defendant up until this point caused him some concern, so he asked him to step out and to the rear of the vehicle.

Deputy Jenkins testified that Defendant was fidgety but complied with the request. He also testified that, though it was clear that English was not Defendant's first language, he did not feel he had any trouble communicating with him. At that time, he articulated to Defendant the reason that he had been stopped and advised him of the rule of thumb for computing a safe following distance. He also asked Defendant about his multiple registrations and where he was headed. After receiving conflicting answers, Deputy Jenkins asked Defendant if he was transporting anything illegal, to which Defendant responded: "no, no, no." To be sure, Deputy Jenkins next asked Defendant if he was transporting any type of narcotics and listed several possible types, to which Defendant again responded: "no, no, no." At that point, Deputy Jenkins asked Defendant for consent to search the vehicle. Defendant agreed. Before searching the vehicle, Deputy Jenkins clarified that Defendant had the right to refuse consent to search. Defendant again agreed.

Deputy Jenkins searched the vehicle, beginning on the passenger's side. He seized a fourth cell phone that he found in the glove box and a pair of Versace sunglasses. He next searched the driver's side but found no collectible evidence. Finally, he retrieved the key and searched the trunk of the vehicle. There, he found several white plastic containers marked with

4

gold labels. He also saw two brown paper bags containing clear plastic freezer bags filled with a white powder, also marked with the same gold labels. Deputy Jenkins testified that he found the gold labels "odd" because they contained uncommon language such as: "room deodorizer," "keep away from animals and small children," "put in oil," and "not for drug use."

Deputy Jenkins placed Defendant into investigative detention based on the discovery of the white powder. An initial vial test of the substance was inconclusive. However, a NIK wipe test did return evidence of cocaine and Deputy Jenkins' K-9 partner alerted on the bags in Defendant's trunk as well. As a result, Defendant was arrested, advised of his rights, and transported to the JCSO station. According to Deputy Jenkins, he gave no statement except to say that the white powder was "not cocaine."

## FRAMEWORK FOR ANALYSIS

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. amend. IV. The temporary detention of an individual during a vehicle stop constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Thus, a vehicle stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). However, as a general rule, a vehicle stop is reasonable when a law enforcement officer has probable cause to believe that a traffic violation has occurred. *Id.* The subjective motivation of the officer is immaterial, and the stop will be valid even if the stated reason for its initiation was pretextual. *United States v. Hassan-El*, 5 F.3d 726, 730 (4th Cir. 1993).

5

Case 7:10-cr-00095-FL Document 58 Filed 02/03/11 Page 5 of 8

## DISCUSSION

Defendant makes only one argument in support of his motion: that Deputy Jenkins lacked a warrant, probable cause, or reasonable suspicion to initiate a traffic stop of Defendant on August 11, 2010 and that, accordingly, the physical evidence seized and any statements made to Deputy Jenkins as a result of that stop should be suppressed. The Court disagrees.

Defendant argues that he did not commit a violation of any traffic law, and that thus, Deputy Jenkins' stop of his vehicle was not supported by probable cause or reasonable suspicion. In support of this argument, he points to the language of the South Carolina "following too closely" statute, which states that: "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent." S.C. Code Ann. § 56-5-1930 (1976). Essentially, Defendant contends that this statute requires a subjective determination by a law enforcement officer as to whether a particular vehicle is following another more closely than is "reasonable and prudent," and that Deputy Jenkins erroneously applied this subjective standard to conclude that Defendant was in violation of the statute. To that end, Defendant contends that Deputy Jenkins erred by relying on the JCSO rule of thumb that one car length for every ten miles per hour of speed that a vehicle is traveling is an appropriate following distance in determining that Defendant was following too closely. Rather, Defendant asks the Court to mitigate in favor of Defendant by focusing instead on Deputy Jenkins' testimony that Defendant was not speeding or violating any other traffic laws and that Deputy Jenkins himself admitted that he does not stop every vehicle which is following another more closely than the rule of thumb calculation would advise.

The Government argues in response that Deputy Jenkins did in fact have probable cause to conclude that Defendant was following too closely. Though agreeing that the South Carolina

6

Case 7:10-cr-00095-FL    Document 58    Filed 02/03/11    Page 6 of 8

statute establishes an inherently subjective standard, the Government contends that Deputy Jenkins was justified in concluding that a vehicle which was no more than one car length behind another while traveling 70 miles per hour on I-95 was not observing a "reasonable and prudent" following distance. Thus, the Government argues, initiation of the traffic stop was valid and there was no subsequent intrusion on Defendant's constitutional rights.

The Court notes that the South Carolina statute's "reasonable and prudent" language does place great discretion in the hands of law enforcement officers and requires them to make a subjective judgment call as to whether a vehicle is following another too closely. However, the Court also believes that using an agency rule of thumb that a safe following distance consists of one car length for every ten miles per hour of speed that a vehicle is traveling is a perfectly reasonable way for an officer to make such a subjective determination.

Here, the evidence indicates that Defendant was, at best, one car length away from the vehicle in front of him while traveling 70 miles per hour on I-95. Thus, Defendant was traveling at considerably less than what the JCSO rule of thumb would consider a safe following distance, given his speed. Accordingly, the Court cannot say that Deputy Jenkins erred in his determination that, based on the rule of thumb, this was not a "reasonable and prudent" following distance. In addition, Deputy Jenkins followed Defendant for four miles after noticing the unsafe distance in order to see if he would enlarge it of his own accord. He did not, and only when the vehicles were coming up on a construction zone did Deputy Jenkins choose to initiate the traffic stop.

Having made a determination that Defendant was in violation of the statute, Deputy Jenkins had probable cause to initiate a traffic stop of Defendant's vehicle. A vehicle stop is reasonable when a law enforcement officer has probable cause to believe that a traffic violation

has occurred, even if the stated reason for the stop is pretextual. *Whren*, 517 U.S. at 810; *Hassan-El*, 5 F.3d at 730. Thus, any other reason Deputy Jenkins may have had for stopping Defendant is immaterial and no Fourth Amendment violation occurred.

Defendant does not argue that Deputy Jenkins was not justified in prolonging the stop by asking for consent to search or that the consent was not freely given. Accordingly, since the Court has satisfied itself that the traffic stop was proper, no further inquiry into the circumstances of the stop need be made. As a result of the foregoing discussion, the Court recommends that Defendant's motion to suppress be denied.

## CONCLUSION

The Court **RECOMMENDS** that Defendant's Motion to Suppress [DE-43] be **DENIED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 3rd day of February, 2011.

DAVID W. DANIEL
United States Magistrate Judge