IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CR-00095-1-FL
No. 7:14-CV-00046-FL

| | |
|---|---|
| **Genaro Flores-Duran**, <br><br> Petitioner, <br><br> v. <br><br> **United States of America**, <br><br> Respondent. | **Memorandum & Recommendation** |

Petitioner Genaro Flores-Duran, proceeding under 28 U.S.C. § 2255, seeks to vacate the 352 month sentence of imprisonment imposed in connection with his conviction for possession with the intent to distribute five (5) kilograms or more of cocaine and possession of a firearm in furtherance of a drug trafficking offense ("Motion to Vacate"). Flores-Duran argues that he is entitled to relief because (1) the sentence imposed by the district court violated the Eighth Amendment because his term of imprisonment was substantially longer than the sentence imposed against his co-defendants, (2) his prosecution on Count II violated the venue provision of Article III § 2 of the Constitution because none of the weapons at issue were recovered in the Eastern District of North Carolina, (3) his conviction was based upon evidence obtained in violation of the Fourth Amendment and the district court erred in refusing to suppress the evidence, and (4) his attorney's failure to object to the Memorandum and Recommendation denying his suppression motion constituted ineffective assistance of counsel in violation of his Sixth Amendment right to be represented by counsel. D.E. 234-1. The Government argues that Flores-Duran is not entitled to relief because the Fourth Circuit rejected the first three arguments on direct appeal. Additionally, the Government contends that Flores-Duran failed to allege

sufficient facts to establish that counsel's performance was deficient or that he was prejudiced by his attorney's allegedly inadequate performance.

After reviewing the docket and the arguments of the parties, it appears that Flores-Duran is not entitled to the relief he seeks because the issues he raises were advanced, and rejected, on direct appeal and because he failed to demonstrate that his counsel was ineffective either at the arraignment or at sentencing. Therefore, the undersigned recommends[1] that the court deny Flores-Duran's Motion to Vacate (D.E. 234) and grant the Government's Motion to Dismiss (D.E. 238).

## I. Background

On August 11, 2010, deputies from the Jasper County, South Carolina's Sheriff's Office stopped Flores-Duran for following behind another car too closely. A search of his vehicle yielded three plastic bags which tested positive for cocaine. In September 2010, a grand jury in the Eastern District of North Carolina indicted Flores-Duran and a co-defendant, Salvador Flores-Duran,[2] on one count of conspiracy to distribute cocaine. D.E. 13.

Flores-Duran subsequently moved to suppress evidence seized at the traffic stop on the ground that officers lacked probable cause to stop his vehicle. D.E. 43. Following an evidentiary hearing, Magistrate Judge David Daniel recommended that the district court deny the motion to suppress. D.E. 58. After neither party objected to the Memorandum and Recommendation, Judge Flanagan adopted the Recommendation and denied the Motion to Suppress. D.E. 63.

---

[1] The district court referred this matter to the undersigned United States Magistrate Judge for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1).

[2] It appears that the warrant for Salvador Flores-Duran's arrest is still outstanding. Any references to Flores-Duran refer to the Movant, Genaro Flores-Duran.

After the district court addressed the suppression motion, the Grand Jury returned a superseding indictment which named two additional defendants, Jorge Albarran-Rivera and Zacharias Espinoza. D.E. 64. The Grand Jury alleged that all four defendants conspired to possess and distribute five or more kilograms of cocaine. *Id.* The Superseding Indictment added a second charge which alleged that Flores-Duran, Albarran-Rivera, and Espinoza knowingly possessed a firearm in connection with a drug trafficking offense. *Id.*

Espinoza and Albarran-Rivera resolved the charges against them through guilty pleas. Espinoza pled guilty to both Counts I and II (D.E. 136) and the district court sentenced him to consecutive terms of 118 months and 60 months, respectively (D.E. 172). Albarran-Rivera pled guilty to Count I in return for the dismissal of Count II. D.E. 132. The district court sentenced him 135 months in prison. D.E. 174.

Flores-Duran, on the other hand, pled not-guilty and proceeded to trial. After a three day trial, the jury unanimously found him guilty of both counts. D.E. 153. As a result, the district court sentenced him to 292 months in prison for Count I and 60 months in prison for Count II. D.E. 185. The district court ordered that the sentences would be served consecutively. *Id.*

Flores-Duran unsuccessfully appealed his sentence to the Fourth Circuit Court of Appeals. The Supreme Court denied his petition for a writ of certiorari on January 14, 2014. *Flores-Duran v. United States*, 134 S.Ct. 1012 (2014). On March 12, 2014, he filed his Motion to Vacate, to which the Government responded by filing a Motion to Dismiss.

## II.     Failure to Comply with Local Rule 83.1

The Memorandum in Support and Reply Memorandum filed in connection with the § 2255 Motion are signed by both Flores-Duran and Bernard V. Kleinman of White Plains, New York. D.E. 234-1, 241  It appears that Kleinman is a member of the bar of the State of New

3

York. *See* http://iapps.courts.state.ny.us/attorney/AttorneySearch (listing Bernard V. Kleinman of White Plains, New York as a currently registered member of the New York Bar). However, there is no indication that Kleinman is admitted to practice before this court or that he has complied with the provisions of the Local Rules regarding appearances by attorneys not admitted to this court. *See* Local Civil Rule 83.1(e).

While the North Carolina Rules of Professional Conduct[3] allow an attorney licensed in North Carolina to draft pleadings on behalf of a *pro se* party without entering a notice of appearance, "[n]o such privilege, however, is afforded to an out-of-state attorney…." *See Burgess v. Vitola*, 2008 N.C.B.C. 7, 2008 WL 821539, ¶¶ 33, 34 (N.C. Super. Ct. Mar. 26, 2008) (Diaz, J.). If Kleinman wishes to continue to represent Flores-Duran in this matter, he shall take the necessary steps to comply with this court's Local Rules regarding appearances by attorneys not admitted to this court. Failure to do so may result in the issuance of an order requiring Kleinman to show cause why he should not be sanctioned for his failure to comply with the Local Rules.

### III. Analysis

#### A. Standard of Review for § 2255 Petitions

In order to prevail on his Motion to Vacate, Flores-Duran must show that (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; or (3) that his sentence exceeded the maximum authorized by law. 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt

---

[3] Unless contradicted by a rule of this court, the ethical responsibilities of attorneys appearing before this court are governed by the North Carolina Rules of Professional Conduct. Local Civil Rule 83.1(j).

hearing thereon, determine the issues and make findings of fact and conclusions of law" regarding the petitioner's motion. 28 U.S.C. § 2255(b). However, ultimately, the petitioner must establish that he is entitled to relief by a preponderance of the evidence. *See, e.g.*, *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam).

The Federal Rules of Civil Procedure are applicable to the court's consideration of a § 2255 motion to the extent that they do not conflict with any other statutory provisions or the procedural rules specifically applicable to § 2255 motions. Rules Governing § 2255 Proceedings, Rule 12. Therefore, in reviewing the Government's Motion to Dismiss, the court will apply the standard that generally applies to motions brought pursuant to Rule 12(b)(6).

The Supreme Court has explained that in order to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Therefore, while a court must accept all the factual allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* The court may also consider documents that are part of the public record, *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176, 180 (4th Cir. 2009), and in the context of a § 2255 motion, "the files and records of the case[,]" 28 U.S.C. § 2255(b).

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory in nature or nothing more than a formulaic recitation of the elements of a claim. *Iqbal*, 556 U.S. at 679. Then, taking the

5

remaining factual allegations as true, the court must determine whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief'" *Id.* If a party fails to show that they are entitled to relief, the court must dismiss the deficient claims.

### B. Disparity of sentence

Flores-Duran's first argument is that his sentence violates the Eighth Amendment because it is disproportionate to the severity of his crimes or sentences imposed on his co-defendants. The Government asserts that this argument is procedurally barred because Flores-Duran did not raise it on direct appeal. Assuming, without deciding, that Flores-Duran is not procedurally barred from raising the proportionality argument, his Eighth Amendment claim fails because a review of the pleadings does not suggest an inference that his sentence was grossly disproportionate to the offenses to which he pled guilty.

The Eight Amendment to the Constitution prohibits the imposition of "cruel and unusual punishments…." U.S. Const. amend VIII. A punishment is cruel and unusual not only when it is "inherently barbaric," but also when it is "disproportionate to the crime" the defendant committed. *Graham v. Florida*, 560 U.S. 59, 59 (2010).

Recently, the Fourth Circuit Court of Appeals addressed proportionality under the Eighth Amendment in *United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014). Cobler, who was twenty-eight years old, pled guilty to three counts of production of child pornography, one count of transportation of child pornography, and one count of possession of child pornography. *Id.* at 574. The district court imposed a Guidelines sentence of 1,440 months, or 120 years. *Id.*

6

On appeal, the Fourth Circuit noted that a defendant could challenge the proportionality of a sentence under the Eighth Amendment in two different ways. In an "as-applied" challenge, "a defendant contests the length of a certain term-of-years sentence as being disproportionate 'given all the circumstances in a particular case.'" *Id.* at 575 (citation omitted). By contrast, in a "categorical" challenge, "a defendant asserts that an entire class of sentences is disproportionate based on 'the nature of the offense' or 'the characteristics of the offender.'" *Id.* (citation omitted).

The Fourth Circuit went on to explain that when reviewing an "as-applied" challenge, the court should make a threshold determination of whether the "gravity of the offense and the severity of the sentence leads to an inference of gross disproportionality." *Id.* (citation omitted). The threshold determination is necessary because "the 'narrow proportionality principle' of the Eighth Amendment 'does not require strict proportionality between crime and sentence,' but 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Id.* (quoting *Graham*, 560 U.S. at 59–60.

It will be a "rare case" where an offender can establish such an inference. *Id.* Only one "term-of-years" sentence has been held grossly disproportionate by the Supreme Court, *see Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding unconstitutional a sentence of life imprisonment without parole for a recidivist who passed a bad check in the amount of $100), and since then, "no defendant before the Supreme Court has been successful in establishing even a threshold inference of gross disproportionality." *Cobler*, 748 F.3d at 576 (citations omitted).

In the event the offender can raise an inference of a grossly disproportionate sentence, the court must then engage in an extended proportionality review. *Id.* This review compares the

7

defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions." *Id.* Because "challenges to non-capital sentences rarely will be successful, due to the substantial deference that reviewing courts owe to Congress and to trial courts[,]" the Fourth Circuit held that "*extensive* proportionality analysis is required only in those cases involving life sentences without parole, or, alternatively, cases involving terms of years without parole that are functionally equivalent to life sentences because of the defendants' ages." *Id.* at 578 (emphasis in original) (citations omitted).

Applying this new test, the Fourth Circuit held that Cobler had not established an inference that his sentence was grossly disproportionate to his crime. *Id.* at 579–80. The Court of Appeals explained that it was appropriate to dismiss his claim without engaging in an extended proportionality analysis because "Cobler's multiple child pornography crimes are at least as grave as [possession of 672 grams of cocaine] in [*Harmelin v. Michigan*], which the Supreme Court deemed sufficiently egregious to justify a similar sentence." *Id.* at 580 (citation and footnote omitted).

In light of the facts and circumstances surrounding this case, Flores-Duran cannot establish an inference that his sentence is grossly disproportionate to his offense. Flores-Duran was the organizer of a drug distribution ring that involved the shipment of large amounts of cocaine across a vast swath of the United States for a period of almost seven years. This operation employed several other individuals and involved the use of stash houses, vehicles with concealed compartments, and firearms. D.E. 180 at ¶ 15. Ultimately, the district court held Flores-Duran accountable for the distribution of over 62 kilograms of cocaine and 71.02 grams of cocaine base. In light of the fact that courts have approved vastly longer sentences for vastly smaller amounts of controlled substances, Flores-Duran cannot establish an inference that his

8

Case 7:10-cr-00095-FL   Document 248   Filed 10/16/15   Page 8 of 19

sentence is constitutionally suspect. *See Harmelin v. Michigan*, 501 U.S. 957, 990–96 (1991) (plurality opinion) (life imprisonment without parole for possessing 672 grams of cocaine not cruel and unusual punishment); *United States v. Kratsas*, 45 F.3d 63, 68 (4th Cir. 1995) (mandatory sentence of life without parole for drug distribution is not grossly disproportionate); *United States v. Spencer*, 25 F.3d 1105, 1110–11 (D.C. Cir. 1994) (30-year sentence as career offender for possession of less than 8 grams of narcotics with intent to distribute not cruel and unusual punishment); *United States v. Cooper*, No. 14-4586, 2015 WL 5769639, at *4 (4th Cir. Oct. 2, 2015) (rejecting Eighth Amendment disproportionality challenge to sentence of life imprisonment for possession with the intent to distribute 1000 kilograms or more of marijuana); *United States v. Zachery*, 601 F. App'x 174, 175 (4th Cir. Feb. 4, 2015) (300 month term of imprisonment for conspiring to distribute 500 grams or more of cocaine and 280 grams or more of cocaine base, and possessing a firearm in furtherance of a drug trafficking crime, did not establish the threshold inference that the sentence is grossly disproportionate under the Eighth Amendment). Having failed to pass the threshold comparison test, an "extensive" comparative analysis is unnecessary, *Cobler*, 748 F.3d at 578 (citing *Graham*, 560 U.S. at 60), and his claim should be dismissed.

While the court is not required to engage in an extensive proportionality analysis, it will briefly address Flores-Duran's contention that his sentence is unconstitutional because it varied so greatly from the sentences imposed on his co-defendants. While Flores-Duran is correct that the district court sentenced him to a much longer term of imprisonment than his co-defendants, his argument fails to address the differing circumstances that confronted the court during the various sentencing proceedings. First, Flores-Duran's co-defendants were sentenced after they pled guilty. Courts have repeatedly found this to be a relevant distinction when addressing the

9

proportionality of sentences imposed on co-defendants. *See United States v. Sigillito*, 759 F.3d 913, 941 (8th Cir. 2014) (sentence not disproportionate because codefendants pled guilty and cooperated with government); *United States v. Dimora*, 750 F.3d 619, 632 (6th Cir. 2014) (sentence not disproportionate because court not required to consider disparity among coconspirators and coconspirators accepted responsibility and cooperated with government); *United States v. Brooks*, 736 F.3d 921, 943 (10th Cir. 2013) (sentence not disproportionate because codefendant pleaded guilty while defendant went to trial); *United States v. Laurienti*, 731 F.3d 967, 976 (9th Cir. 2013) (same); *United States v. Offill*, 666 F.3d 168, 179 (4th Cir. 2011) (sentence not disproportionate because it was below Guidelines range and codefendants cooperated with government or accepted responsibility).

Additionally, Flores-Duran's advisory guideline range with respect to Count I was much higher than his co-defendants. *Compare* D.E. 165 at ¶ 45 and D.E. 167 at ¶ 59 *with* D.E. 180 at ¶ 53. Flores-Duran faced an advisory guideline range of 292 to 365 months, (D.E. 180 at ¶ 53), while the Sentencing Guidelines suggested that Albarran-Rivera and Espinoza's should be sentenced to terms of 135 to 168 months in prison, (D.E. 165 at ¶ 45 & D.E. 167 ¶ 59). Given the disparity between the various defendants' advisory guideline ranges, it is unsurprising that there were substantial distinctions between the sentences the district court actually imposed. *See United States v. Flores-Duran*, 531 F. App'x 348 (4th Cir. 2013) (affirming court's imposition of four-level enhancement for defendant's leadership role). Moreover, Flores-Duran's sentence on Count I was at the low end of the advisory Guideline range and well within the statutorily prescribed sentencing range of ten years to life.

Flores-Duran failed to allege sufficient facts that would give rise to an inference that his sentence was grossly disproportionate to the offenses he committed. Courts have repeatedly

10

affirmed similar (or more severe) sentences under comparable circumstances. Additionally, he cannot establish a violation of the Eighth Amendment based upon the sentences imposed on his co-defendants because there were valid reasons for the disparities. In light of his inability to establish that his sentence was constitutionally suspect, Flores-Duran's Eighth Amendment claims should be dismissed.

### C. Jurisdiction over Count II

Flores-Duran next contends that this court lacked jurisdiction[4] over Count II, possession of a firearm in furtherance of a narcotics conspiracy. He maintains that his prosecution violates the Constitution's requirement that criminal trials occur in the state where the crime occurred, U.S. Const. art. III, § 2, cl 3, because no weapons were ever recovered in the Eastern District of North Carolina. The Government argues that this issue was previously raised and rejected. The court concludes that Flores-Duran's argument lacks merit because it was already addressed by the Fourth Circuit Court of Appeals.

The court notes that Flores-Duran moved for dismissal of Count II based on improper venue (D.E. 112), but the court denied the motion. *See* Docket, Apr. 25, 2011 (Oral Order). The court accepted the Government's argument that, under § 924(c), venue is proper wherever the conspiracy occurred. D.E. 195 at 30:18–25. The Government asserted that venue was proper in the Eastern District of North Carolina because the firearms were used to carry out the narcotics conspiracy within this district. *Id.* The court denied, without prejudice, Flores-Duran's motion to dismiss for improper venue. *Id.* at 34:12–15. On appeal, the Fourth Circuit noted that the underlying offense was a drug conspiracy. D.E. 227 at 20. It stated that "[v]enue is proper in a 924(c) prosecution in any district where the underlying offense occurred." *Id.* (citing *United*

---

[4] Flores-Duran uses lack of jurisdiction and improper venue interchangeably.

*States v. Rodriguez-Moreno*, 526 F.3d 275, 281 (1999)). Observing that several of the overt acts in furtherance of the conspiracy occurred in the Eastern District of North Carolina, the Fourth Circuit concluded that venue was proper in the this forum. *Id.* at 20–21.

Because Flores-Duran raised this issue on direct appeal, he cannot relitigate it through a collateral attack. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir.1976) (recognizing that a § 2255 petitioner cannot "recast, under the guise of collateral attack, questions fully considered by th[e appellate] court"). Therefore, the undersigned recommends that the district court dismiss this claim.

### D. Failure to suppress seizure of lidocaine from vehicle

Flores-Duran also argues that the lidocaine seized from his vehicle should have been suppressed because the deputy relied upon a subjective standard to determine that Flores-Duran was following the car in front of him too closely. He also maintains that he was possibly subject to racial profiling by sheriff's deputies, in violation of his Fourth Amendment rights. The Government responds to this argument by asserting that Flores-Duran waived his right to pursue this argument where he failed to object to Magistrate Daniel's recommendation that the motion to suppress be denied. The Government also correctly points out that this argument, too, was raised on direct appeal and rejected.

Both the district court and the Court of Appeals for the Fourth Circuit determined that there was probable cause for sheriff's deputies to stop Flores-Duran's vehicle. South Carolina's statute prohibiting vehicles from following too closely provides:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

S.C. Code Ann. 56-5-1930(a).

Previously, the court found that "using an agency rule of thumb that a safe following distance consists of one car length for every ten miles per hour of speed that a vehicle is traveling is a perfectly reasonable way for an officer to make such a subjective determination" as to whether a vehicle is following too closely. *United States v. Flores–Duran*, No. 7:10–CR–00095–FL, 2011 WL 780592, at *4 (E.D.N.C. 2011), *Mem. & Rec. adopted by* 2011 WL 780172 (E.D.N.C. Feb. 28, 2011); *see also United States v. Massenberg*, No. 4:11-CR-4-FL-1, 2011 WL 3652746 (E.D.N.C. July 19, 2011). Other courts have reached similar conclusions and upheld traffic stops employing this standard. *See United States v. Dodwell*, No. 1:12-cr-93-MR-DLH, 2014 WL 1573755, at *20 (W.D.N.C. Apr. 21, 2014) (deputy had reasonable basis to stop vehicle based on deputy's opinion, developed from experience and training, that one vehicle should follow another no closer than one car length per ten miles per hour of speed); *see also United States v. Becerra-Becerra*, 437 F. App'x 827, 828–29 (11th Cir. 2011) (officer had probable cause to stop vehicle for following too closely where officer stated that there should be one car length between vehicles, for every ten miles per hour and defendant was travelling at 70 miles per hour but was only 1–2 car lengths behind the vehicle); *United States v. Dukes*, 257 F. App'x 855, 858 (6th Cir. 2007) (noting that a number of Ohio cases have used the car-length rule as an indicator of a violation for following too closely); *United States v. Sanford*, 476 F.3d 391, 393 (6th Cir. 2007) (deputy sheriff provided sufficient objective facts to justify his decision to make a traffic stop for following too closely because he did not maintain a distance of at least one car length for every ten miles per hour of speed); *State v. Wilson*, 155 N.C. App. 89, 95, 574 S.E.2d 93, 98 (2002) (holding that an officer had probable cause to stop defendant for a violation of N.C. Gen. Stat. § 20–152(a) where defendant was "traveling behind another vehicle at a distance of less than one car length and at a speed of sixty-nine miles per hour").

Given the general acceptance of the rule applying one car length for every ten miles per hour of travel, the sheriff's deputies' utilization of such judgment to stop Flores-Duran's vehicle was neither unreasonable nor unlawful. Consequently, his argument is subject to dismissal.

Flores-Duran offers little, if anything, in support of the argument that he was the target of racial profiling when his vehicle was stopped by Jasper County Sheriff's deputies. He maintains that such a claim may be raised in a habeas petition and requests that he be permitted to explore this issue. The Government does not address this specific issue of racial profiling but argues instead that Flores-Duran waived his right to challenge the seizure of evidence from his vehicle. The court finds that Flores-Duran failed to demonstrate that he is entitled to relief on this claim.

The Fourth Circuit has recognized that "although an officer's 'motive[ ] for stopping an automobile that was violating traffic laws is irrelevant to the legitimacy of the stop under a Fourth Amendment analysis, … racially motivated law enforcement can violate the equal protection component of the Fifth Amendment's Due Process Clause.'" *United States v. Hammond*, 353 F. App'x 877, 879 (4th Cir. 2011) (quoting *United States v. Bullock*, 94 F.3d 896, 899 (4th Cir. 1996)); *see also United States v. Suarez*, 321 F. App'x 302, 305 (2009) ("Allegations of racially motivated law enforcement implicate the Equal Protection Clause rather than the Fourth Amendment."). To establish a claim of racial profiling, "[t]he claimant must demonstrate that the [enforcement policy] had a discriminatory effect and that it was motivated by a discriminatory purpose…. To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Hammond*, 353 F. App'x at 879 (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). "The standard for establishing a selective enforcement claim is 'demanding' and requires evidence that

14

clearly contradicts the presumption that officers have not violated equal protection." *Suarez*, 321 F. App'x at 305 (quoting *Armstrong*, 517 U.S. at 463–65).

Here, Flores-Duran has failed to allege sufficient facts to establish that similarly-situated drivers of different racial identities were treated more favorably and/or were not prosecuted for traffic violations. A naked contention of racial profiling is inadequate to sustain Flores-Duran's claim. *Massenberg*, 2011 WL 3652746 at *10. He has thus failed to support his racial profiling claim or to meet the "demanding" standard of selective enforcement to overcome the presumption that sheriff's deputies did not violate his equal protection guarantees. Having failed to offer any evidence to establish a claim of racial profiling, the court recommends dismissal of Flores-Duran's argument. *See Massenburg*, 2011 WL 3562746 at *9–11 (finding defendant's naked contention of racial profiling was inadequate to sustain his claim of an equal protection violation under the Fifth Amendment), *Mem. & Rec. adopted by* 2011 WL 3652741 (Aug. 17, 2011).

### E. Ineffective Assistance of Counsel

Flores-Duran next claims that his sentence was imposed in violation of the Constitution because his appointed counsel's performance was so inadequate that it violated his right to counsel under the Sixth Amendment to the Constitution. Specifically, he claims counsel failed to object to Magistrate Judge Daniel's recommendation that his motion to suppress be denied. The Government correctly asserts that Flores-Duran has not demonstrated that counsel's performance was objectively unreasonable or that he suffered prejudice as a result of counsel's actions.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for his defense." U.S. Const. amend VI. A defendant's right to assistance of counsel may be violated if his attorney fails to provide

adequate legal assistance. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This right applies at all stages of a criminal proceeding, including sentencing. *Mempa v. Rhay*, 389 U.S. 128, 134 (1967); *United States v. Burkley*, 511 F.2d 47, 51 (4th Cir. 1975).

In *Strickland*, the Supreme Court held that a petitioner must satisfy a two-pronged test to establish a claim of ineffective assistance of counsel. 466 U.S. at 686–87. First, the petitioner must show that his attorney's performance fell below an objective standard of reasonableness. *Id.* at 688. Courts must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In order to demonstrate prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Flores-Duran asserts that his counsel was ineffective because he failed to object to Magistrate Judge Daniel's recommendation that the motion to suppress be denied. As an initial matter, the Court of Appeals noted that Flores-Duran waived the right to appeal the suppression issue by failing to object to Magistrate Judge Daniel's Memorandum and Recommendation. *Flores-Duran*, 531 F. App'x at 355. The Fourth Circuit determined, in the alternative, that the district court did not err in finding that probable cause existed to stop Flores-Duran's vehicle. *Id.* This fact, combined with Flores-Duran's consent to search the vehicle, rendered the district court's denial of the motion to suppress proper. *Id.* at 356. Given these findings, it would seem difficult, at best, for Flores-Duran to establish that, had counsel filed objections to Magistrate

16

Judge Daniel's recommendation to deny the motion to suppress, the outcome would have been different and the evidence seized at the traffic stop would have been suppressed.

Nonetheless, the court reviews this claim in the context of ineffective assistance of counsel. After moving to suppress evidence seized and statements given at the time of the police stop on August 11, 2010, an evidentiary hearing was held on February 1, 2011. Magistrate Judge Daniel thereafter issued a Memorandum and Recommendation in which he recommended that the court deny Flores-Duran's motion to suppress. D.E. 58. Magistrate Judge Daniel found that the sheriff's deputy's stop of Flores-Duran's vehicle was permissible because there was probable cause to believe that a traffic violation had occurred. *Id.* Flores-Duran argued, as above, that the deputy erred in relying on the subjective standard of one car length per ten miles per hour of speed a car travels to determine that Flores-Duran was following another vehicle more closely than is reasonable and prudent. *Id.* Flores-Duran asked the court to focus on the deputy's testimony which stated that Flores-Duran was neither speeding nor violating any other traffic laws, and his further testimony that he does not stop every vehicle that follows too closely. *Id.*

Magistrate Judge Daniel found that South Carolina's "reasonable and prudent" standard gives law enforcement officers great discretion and requires them to make subjective calls. *Id.* Noting that Flores-Duran's vehicle was estimated to be travelling 70 miles per hour and was no more than one car length behind the vehicle in front of it, Magistrate Judge Daniel found that the deputy had probable cause to conclude that Flores-Duran was following too closely. *Id.* Accordingly, the traffic stop was valid and no violation of Flores-Duran's constitutional rights occurred. *Id.*

On February 28, 2011, Judge Flanagan adopted Magistrate Judge Daniel's recommendation and denied the motion to suppress. D.E. 63. Judge Flanagan reviewed

17

Magistrate Judge Daniel's findings and conclusions, and noted that he thoroughly examined Flores-Duran's argument. *Id.* After reviewing the filings, the Memorandum and Recommendation, and relevant case law, the court found no clear error, agreed with Magistrate Judge Daniel's conclusions, and adopted his findings and recommendations. *Id.*

Flores-Duran has not identified the evidence he would have presented to the court to support objections to Magistrate Judge Daniel's recommendation. Rather, Flores-Duran argues, in conclusory terms, that the district court erred in denying his suppression motion. This is insufficient to establish that counsel rendered ineffective assistance by failing to pursue objections of questionable merit and unlikely success. Nor has Flores-Duran presented any evidence to support a finding that counsel's performance fell below an objectively reasonable standard or demonstrate that, had objections been filed, the motion to suppress would have been granted. Mindful that an attorney's decision are given great deference, and having failed to establish either that counsel's actions were unreasonable or he suffered prejudice as a result, Flores-Duran's ineffective assistance claim is subject to dismissal.

### III. Conclusion

For the foregoing reasons, the undersigned recommends that the court deny Flores-Duran's Motion to Vacate (D.E. 234) and grant the Government's Motion to Dismiss (D.E. 238).

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject,

or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: October 38, 2015.

                                      */s/ Robert T. Numbers II*
                                      ROBERT T. NUMBERS, II
                                      UNITED STATES MAGISTRATE JUDGE